IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

M. L.,[1]

        Plaintiff,

v.                                Case No. 21-1046-JWB

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income. The matter is fully briefed and is ripe for decision. (Docs. 16, 21, 22.) For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv), 20 C.F.R. § 416.945. The RFC represents the most that the claimant can still do in a work setting despite her impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. § 416.920(e), (f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final

step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

## II. Background and Procedural History

Plaintiff protectively filed an application for supplemental security income on April 19, 2019, alleging a disability beginning July 31, 2016 when she was 41 years old. She was 44 years old at the time of the application. Her claim was denied initially and upon reconsideration at the administrative level, after which Plaintiff requested an evidentiary hearing before an Administrative Law Judge (ALJ). On October 8, 2020, ALJ Scott Johnson conducted a hearing by telephone (due to COVID-19) at which Plaintiff testified, as did impartial vocational expert Jennifer Smidt. (Tr. at 15.[2])

The ALJ issued a written opinion denying Plaintiff's application on November 4, 2020. (*Id.*) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date. (*Id.* at 17.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: right rotator cuff tear, bipolar affective disorder, post-traumatic stress disorder (PTSD), borderline personality disorder, panic disorder, major depressive disorder, alcohol abuse,

---

[2] Citation to "Tr." refers to the administrative transcript. (Doc. 15.)

3

cannabis abuse, and obesity. (*Id.*)  At step three, the ALJ found that none of the impairments, alone or in combination, met or medically equaled the severity of any of the presumptively disabling impairments listed in the regulations. (*Id.* at 18-19.)

The ALJ next determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b).  The ALJ found Plaintiff can occasionally operate right hand controls; can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; can frequently stoop, kneel, and crouch; can occasionally crawl; can frequently reach in front and laterally and handle with the right upper extremity; can occasionally reach overhead with the right dominant upper extremity; and can have occasional exposure to hazards such as use of dangerous moving machinery and exposure to unprotected heights. (*Id.* at 20.)  The ALJ further found Plaintiff is able to apply common sense understanding to carry out detailed but uninvolved instructions in the performance of simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions with few, if any, work place changes, and that she can have frequent interaction with the public, co-workers, and supervisors. (*Id.*)

At step four, the ALJ noted that Plaintiff had no past relevant work. (Tr. at 24.)  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. Based on testimony from the VE, the ALJ found Plaintiff could perform several positions listed in the DOT [Dictionary of Occupational Titles] at the light exertional level, including collator operator (DOT 208.685-010; Specific Vocational Preparation (SVP) 2; 44,200 jobs nationally); router – clerical (DOT 222.587-038; SVP 2; 35,000 jobs nationally); and photocopy machine operator (DOT 207.685-014; SVP 2; 9,800 jobs nationally). (*Id.*)  The VE testified that the DOT

does not specify directional reach, so her opinion that a person who was limited to occasional overhead reaching could perform the jobs she listed was not specifically covered by the DOT but was based on her experience and knowledge. (Tr. at 62.)

In this appeal, Plaintiff argues that the RFC was not supported by substantial evidence because it found Plaintiff was capable of frequent reaching and handling with her dominant right upper extremity. (Doc. 16 at 7.) Plaintiff contends "[r]emand is required because the ALJ did not identify evidence in support of this assessment, did not explain his determination, and did not reconcile the evidence in the record which undermined his assessment." (*Id.* at 8.)

**III. Analysis**

Plaintiff's reported work history consisted of six months as a fast-food crew member and telemarketer in 2013, and four months as a home health care worker in 2015. (Tr. at 214; *id.* at 41.) Plaintiff's testimony included admissions of regular substance abuse. (*Id.* at 42-43, 47.) Plaintiff testified she hurt her right shoulder in a traffic accident; that accident occurred in 2017.[3] She indicated she has not recently had any treatment for the shoulder and said nothing can be done about it except to have surgery, which she cannot afford. She is right-hand dominant. When asked if she can reach in front of her with her right arm, Plaintiff said she "can't stretch it all the way out" and can't put weight on it, although "depending on what's going in there, in my hand, then that makes a difference." (Tr. at 44.) She acknowledged she can reach to the side but said there is "no way" she can reach overhead with her right arm. (*Id.*) Plaintiff is able to reach overhead with her left arm. (*Id.*) Plaintiff estimated the heaviest weight she can lift with her right arm is

---

[3] Plaintiff asserts that the accident occurred in 2014 and that "[t]his error apparently informed Defendant's understanding of the record as a whole." (Doc. 22 at 2.) In support of the 2014 date, Plaintiff cites Tr. at 333-34, but those records indicate Plaintiff sought emergency room treatment for a broken tooth in 2014, and that her car accident and shoulder injury occurred in July of 2017. (Tr. at 332-34.)

"maybe five pounds," while she can lift perhaps fifteen pounds with her left arm. (*Id*. at 48.) Plaintiff lives by herself and can cook, clean, and shop for herself. (*Id*. at 54.)

Hospital records show Plaintiff sought treatment for pain in her right shoulder shortly after the car accident in July 2017. (*Id.* at 332.) She complained of continuing pain and was seen again in November 2017. The physician noted a full passive range of motion, with clicking and catching within the joint, and decreased active range of motion secondary to pain, with a positive Hawkins (impingement) test. (*Id.* at 328.) Plaintiff underwent an MRI in 2018. The findings included full-thickness tears in, and retraction of, the supraspinatus and infraspinatus tendons, with muscular atrophy and superior migration of the humeral head. (*Id.* at 389-90.) The doctor recommended "arthroscopy with possible arthroscopic versus open rotator cuff repair." (*Id.*) A December 2018 note indicated Plaintiff reported not having insurance or money to pay for the recommended surgery. (*Id.* at 321.)

Plaintiff underwent a consultative examination in August 2019 by Jesal Amin, M.D. Amin found Plaintiff had right shoulder range of motion deficits and decreased grip strength and decreased right upper extremity strength deficits. (*Id.* at 368.) Plaintiff's active range of motion was limited to 75 degrees for right shoulder flexion and abduction, 75 degrees for external rotation, and 60 degrees for internal and external rotation, compared to 150, 150, 80, and 90 degrees, respectively, for the left shoulder. (Tr. at 368-69.) Amin rated Plaintiff at 4 of 5 in grip strength and upper extremity strength on the right side, compared to 5 of 5 in both categories on the left side. (*Id.* at 369.) Amin otherwise noted normal range of motion, 5 of 5 lower extremity strength, normal muscles, normal sensation, normal reflexes, and normal fingers. (*Id.*) Amin's exam noted there was no joint swelling, erythema, effusion, or deformity; that Plaintiff was able to button and unbutton a shirt, could pick up and grasp a pen and write a sentence; could lift, carry, and handle

6

personal belongings with mild difficulty on the right; and could dress and undress adequately. (Tr. at 368.)

Two state agency medical consultants made administrative findings concerning Plaintiff's RFC. David Marty, M.D., opined that "[d]ue to the claimant's right rotator cuff tear causing ROM deficits, decreased right upper extremity strength and decreased right grip strength, the claimant will be limited with reaching in all directions on the right and with handling on the right to occasionally." (*Id.* at 75.) Jan Hunter, D.O, affirmed these findings upon review. (*Id.* at 93-95.) Additionally, one of Plaintiff's physicians, Jana Zaudke, M.D., provided a medical source statement in September 2020 opining that Plaintiff could never reach and could only occasionally handle. (*Id.* at 386.)

> The regulations governing non-exertional limitations provide in part that
>
> Reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do.

Social Security Ruling (SSR) 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). "Occasionally" means occurring from very little up to one-third of the time. "Frequent" means occurring from one-third to two-thirds of the time. SSR 83-10, 1983 WL 31251, *5-6 (Jan. 1, 1983).

The record as a whole – including Plaintiff's testimony and Dr. Amin's examination findings – provided substantial evidence upon which the ALJ could reasonably find that Plaintiff can "frequently reach in front and laterally and handle with the right upper extremity," as well as "occasionally reach overhead with the right dominant upper extremity." (Tr. at 20.) Plaintiff acknowledged in her own testimony that despite her right rotator cuff injury she is able to reach out to the side with her right arm. (*Id.* at 44.) Her testimony can also be fairly construed as

7

acknowledging she is physically capable of frequently reaching in front with her right arm, notwithstanding her qualification that she "can't stretch it all the way out." (*Id.*) Among other things, Plaintiff indicated she could hold something with her right arm if she "cupped it like a football," and "can lift the bottom part of my [right] arm up" but not all the way up. (*Id.* at 48.) Plaintiff denied being able to reach overhead at all with her right shoulder, but at the same time she acknowledged retaining the ability to engage in a wide range of activities that involve reaching and handling generally, including bathing and getting dressed, driving, cleaning, washing dishes, vacuuming, doing laundry, and taking care of a dog (including buying dog food and taking the dog to the vet). (*Id.* at 41, 53-55, 246.) The ALJ further noted Plaintiff's ability to prepare meals and shop in stores. (*Id.* at 20.)

As indicated, Dr. Amin found Plaintiff had limitations on active range of motion in her right shoulder, but also that she had only slightly reduced strength – rated as 4 out of 5 – in both the right grip and upper right extremity, as well as generally normal findings otherwise. Additionally, records indicated Plaintiff had full passive range of motion in her right shoulder. (Tr. at 70, 324.) The ALJ considered this evidence in determining Plaintiff's limitations but also pointed to evidence of Plaintiff's "good hand-eye coordination, normal muscles, normal sensation, normal reflexes, and normal fingers," all of which had some support in medical findings. (Tr. at 22.) The ALJ concluded that Plaintiff's symptoms limited her to unskilled light work with limitations – including some reaching limitations – but "her otherwise normal findings" discussed above "demonstrate[] that she does not have additional limitations." (*Id.*) All of the factors cited by the ALJ, to one degree or another, lent rational support for the ALJ's conclusions that Plaintiff was limited to occasional reaching overhead with the right shoulder but was otherwise not limited in the ability to frequently reach and handle on the right side.

The ALJ considered the medical opinions of Drs. Marty, Hunter, and Zaudke, but ultimately found their more restrictive findings on Plaintiff's ability to reach and handle to be unpersuasive. Under the regulations, the ALJ was required to consider "the persuasiveness of those opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021). The ALJ did so here, citing inconsistencies between those opinions and other evidence. The ALJ concluded the limitations endorsed by Dr. Marty and Dr. Hunter were inconsistent with, or outweighed by, the range of motion findings noted above and the activities Plaintiff acknowledged she was physically capable of performing. (*Id.* at 23.) With respect to Dr. Zaudke, the ALJ likewise cited evidence that was inconsistent with Zaudke's opinion that Plaintiff could "never" engage in reaching, including Zaudke's own prior examination of Plaintiff that indicated no musculoskeletal problems. (*Id.* at 23, 397.) The ALJ thus complied with the method of review required by the regulations and cited substantial evidence to support his conclusions.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (citation omitted). That threshold "is not high." *Id.* "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted.) In this instance, the ALJ cited evidence of findings that Plaintiff had full passive range of motion on her right shoulder, only slightly reduced grip and upper extremity strength on the right side, and otherwise normal findings. The ALJ cited Plaintiff's own testimony tending to support the finding that Plaintiff could frequently reach in front and to the side on her right side. Additionally, the ALJ cited or relied on evidence of

9

Plaintiff's activities including driving, cleaning, doing laundry, shopping, washing dishes, and getting dressed. The ALJ's RFC determination was supported by substantial evidence.

### IV. Conclusion

The final decision of the Commissioner denying Plaintiff's application for supplemental security income is AFFIRMED. The clerk is directed to enter judgment accordingly. IT IS SO ORDERED this 30th day of March, 2022.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE